In the Matter of INTERCO INCORPO-
RATED, et al., Debtors.

Bankruptcy No. 91-4-00442-172.

United States Bankruptcy Court,
E.D. Missouri, E.D.

May 24, 1991.

Martin Green, Green, Hoffman & Dank-
enbring, St. Louis, Mo., Lewis A. Kaplan,
Paul, Weiss, Rifkind, Wharton & Garrison,
New York City (Geoffrey Hazard, Profes-
sor of Law, Yale Law School, New Haven,
Conn., Cravath, Swaine & Moore, New
York City, on brief), for Wasserstein Perel-
la & Co.

Sandra E. Mayerson, Examiner, Robert
Ehrenbard, Kelley Drye & Warren, New
York City, for examiner.

Gregory D. Willard, Lloyd A. Palans,
Bryan, Cave, McPheeters & McRoberts, St.
Louis, Mo., for debtors.

Keith E. Mattern, Leonard Chipperfield,
St. Louis, Mo., for Interco Inc.

Louis Virdure, Newman, Goldfarb, Frey-
man & Stevens, St. Louis, Mo., for Unse-
cured Creditors Committee.

Steven N. Cousins, David L. Going, Arm-
strong, Teasdale, Schlafly, Davis & Dicus,
St. Louis, Mo., for Boatmen's Nat. Bank as
trustee for Medium Term Note Holders.

David A. Warfield, Husch, Eppenberger,
Donohue, Cornfield & Jenkins, St. Louis,
Mo., Philip Bentley, Kramer, Levin, Nes-
sen, Kamin & Frankel, New York City, for
Unsecured Debenture Holders.

James S. Cole, Asst. U.S. Trustee, St.
Louis, Mo., for U.S. Trustee's Office.

David A. Lander, Thompson & Mitchell,
St. Louis, Mo., Bruce Angiolillo, Simpson,
Thatcher & Bartlett, New York City, for
Secured Bank Lenders.

Edwin Brzezinsky, U.S. Attorney's Of-
fice, St. Louis, Mo., for U.S.

## ORDER WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES J. BARTA, Bankruptcy Judge.

### Introduction

Wasserstein Perella & Co., Inc. ("WP &
Co.") has moved for an order disqualifying
the Examiner, Sandra E. Mayerson, and

her counsel, Kelley Drye & Warren ("KDW"), in these proceedings, on the grounds that they are not "disinterested persons" under the Bankruptcy Code and have a conflict of interest in violation of the applicable rules of professional responsibility because KDW has previously performed certain visa application services for WP & Co.

The Examiner and KDW have opposed WP & Co.'s motion as have all of the other interested parties who have appeared on this motion, including the United States Trustee, the Debtors, the Secured Bank Lenders, the Official General Unsecured Creditors' Committee, The Boatmens' National Bank of St. Louis, as Trustee for the Medium Term Note Holders, and the Official Committee of Unsecured Debenture Holders. They maintain that the Examiner and KDW are, in fact, disinterested persons under the Bankruptcy Code, have not violated the Missouri Supreme Court Rules or the code of professional responsibility and have no conflict of interest.

WP & Co.'s motion was filed on April 11, 1991. The Court received and considered the following written submissions:

(1) Motion To Disqualify Examiner and Counsel to the Examiner, Memorandum of Law in Support of WP & Co.'s Motion to Disqualify the Examiner and Counsel to the Examiner, Stipulation of Facts, dated April 9, 1991, Affidavits of George Honig, Karen Piaggione and Lee Siegel, filed by WP & Co. on April 11, 1991;

(2) Objection to Wasserstein Perella & Co., Inc.'s Motion to Disqualify the Examiner and Counsel to the Examiner; Memorandum of Law of Examiner's Counsel, Kelley Drye & Warren, in Opposition to Wasserstein Perella & Co., Inc.'s Motion For Disqualification; Memorandum of Law of the Examiner, Sandra E. Mayerson, in Opposition to Wasserstein Perella & Co., Inc.'s Motion For Disqualification; Affidavits of Barry Gleen and Takeshi Sakuragi, filed by KDW and the Examiner on April 16, 1991;

(3) Response of the Official Committee of Unsecured Debenture Holders to the Motion to Disqualify the Examiner And Her Counsel, filed on April 17, 1991;

(4) Memorandum of Debtors in Opposition to Motion to Disqualify Examiner and Counsel to The Examiner, filed on April 17, 1991;

(5) Response of the Boatmen's National Bank of St. Louis, As Trustee For The Medium Term Notes, In Opposition to the Motion to Disqualify Examiner and Counsel to The Examiner, filed on April 17, 1991;

(6) Response of the Official General Unsecured Creditors' Committee to Motion to Disqualify Examiner and Counsel to the Examiner, filed on April 18, 1991; and

(7) United States Trustee's Response to Motion to Disqualify Examiner and Examiner's Attorneys, filed on April 17, 1991.

The Court heard oral argument on April 18, 1991. After hearing counsel for the parties, the Court denied WP & Co.'s motion and gave an oral summary of its findings of fact and conclusions of law. In preparing these written Findings of Fact and Conclusions of Law, the Court has considered the record as a whole, including the foregoing submissions and arguments of counsel. The following Findings, Conclusions and Order incorporate and supplement the Court's oral findings, conclusions and order.

## FINDINGS OF FACT

The Court finds the following facts based on the Stipulation of Facts, dated April 9, 1991, submitted by counsel for WP & Co, and KDW, and on the record as a whole:

1. WP & Co. is a major international investment banking firm with its principal office in New York City and other offices in Chicago, Houston, London, Los Angeles and Tokyo. The Nomura Securities Co., Ltd. ("Nomura"), a Japanese securities firm, owns an interest in WP & Co.

2. Kelley Drye & Warren ("KDW") is a major law firm with its principal office in

New York City and other offices in Los Angeles, Washington, D.C., Chicago, Miami, Parsippany, New Jersey, Stamford, Connecticut, Brussels and Tokyo.

3. Tsuchiya Sukuragi & Sogi ("TSS") is a Tokyo law firm affiliated with KDW. Francis Y. Sogi is and at all relevant times was a partner in both KDW and TSS. TSS's offices are located in the same building and on the same floor as KDW's Tokyo office under separate leases. KDW has argued that the two firms are separate legal entities.

4. Christopher Helm has been an associate of KDW since January 1, 1988. Since April 1, 1990, he has been employed in Tokyo by TSS, where he is a trainee in Japanese law. He is listed in the 1991 edition of the Martindale–Hubbell Law Directory as a KDW associate. He is expected to return to KDW in New York following his employment by TSS.

5. KDW has performed services for or at the request of WP & Co. in connection with certain visa applications.

6. KDW has not performed any services for or at the request of WP & Co. unrelated to those visa applications.

7. At various times since its inception in 1988, WP & Co. has retained and/or engaged several law firms in the United States and abroad for various purposes, including immigration matters. KDW has been WP's principal counsel on immigration matters relating to Japan.

8. The visa application services performed by KDW from their inception in 1989 included preparing or assisting in the preparation of applications for United States H–1 visas for seven Japanese employees of Nomura who sought temporary employment in the United States at WP & Co., and applications for Japanese visas for four WP & Co. employees who sought to work in Japan for Nomura or Nomura Wasserstein Perella Co., Ltd. ("NWP"), a Japanese entity. Nine of the 11 visa applications have been granted, one is filed and pending in Japan and the other is prepared and ready for filing in Japan.

9. With the exception of the first visa application in 1989, Barry Gleen, an associate whose work is limited to immigration matters, was the attorney at KDW principally involved with WP visa applications. He has dealt almost exclusively with two paralegals at WP & Co., Tracy Donner and her successor, Karen Piaggione, who with rare exceptions, were his exclusive contacts at WP & Co.

10. Neither KDW nor TSS has received any confidential information concerning WP & Co.'s activities in relation to Interco or Ethan Allen in connection with these visa applications or otherwise. To the best of WP & Co.'s current belief, none of the information received by KDW or TSS from WP & Co. has any bearing on any of the matters the Examiner has been asked to consider. None of the KDW personnel involved in the visa applications has been involved in the Interco matter, and KDW represents that none of them will be involved.

11. KDW first provided services for WP & Co. in February 1989 in connection with an application to obtain a Japanese business visa for Michael Freedman.

12. In 1989, KDW did some work in connection with a short term Japanese visa request for Mr. Ananth Krishnamurthy.

13. In June or July 1989, WP & Co. assigned Toby Myerson to its Tokyo office. KDW handled Mr. Myerson's visa application, performing essentially the same services it had with respect to the Freedman visa.

14. In 1990, KDW handled visa applications for five Japanese nationals sent by Nomura to WP & Co. As in the past, KDW dealt almost exclusively with Piaggione regarding these matters.

15. Each of the visa applications for the Japanese nationals coming to WP & Co. required a supporting statement from WP & Co. which was drafted at KDW and then sent to WP & Co. for review and execution. Because it became inconvenient to retype KDW drafts onto WP & Co. letterhead, KDW was provided with a supply of WP & Co. letterhead.

16. WP & Co. recently requested KDW to obtain Japanese visas for two of its employees, Messrs. Paul Slawson and Ananth Krishnamurthy. In 1991, KDW did some work in connection with those applications. KDW also requested that TSS perform, and TSS performed, certain tasks in that connection.

17. Mr. Slawson's completed application was filed by Mr. Slawson personally at the Japanese immigration office on March 8, 1991 and is pending. KDW has informed the attorneys acting for WP & Co. in this matter that neither KDW nor TSS are authorized under Japanese law to file Krishnamurthy's visa application papers in Japan and that the papers must be filed by the applicant himself (as in Mr. Slawson's case) or by the sponsoring employer. There is no prohibition against attorneys providing advice with respect to visa applications, but they are not authorized to represent applicants or their employers before the immigration authorities.

18. On March 22, 1991, counsel for WP & Co. contacted KDW to question whether the participation of a KDW partner as examiner, and of KDW as counsel to the examiner, in the Interco bankruptcy were appropriate. KDW and counsel for WP & Co. met and agreed to seek to prepare an agreed statement of facts so that the matter could be presented promptly and efficiently to the Court. They have diligently pursued that goal.

19. All services performed in connection with these visa matters, whether by KDW or TSS, were billed by KDW to WP & Co. and paid for by WP & Co. Every statement to WP & Co. bore the Client No. 066158 and the Matter No. 0001. The fees paid for these services, approximately $15,000, are insubstantial as compared to the total revenues of KDW and the total legal expenses incurred by WP & Co.

20. The following documents, consisting of copies of certain correspondence, statements and memoranda of KDW, WP & Co., NWP and TSS appended to the parties' stipulation, were also received and considered:

1. Telecopy dated July 17, 1990 from Barry H. Gleen to Karen Piaggione.

2. WP & Co. Interoffice memorandum dated September 26, 1990 from Karen Piaggione to David McCreery responding to attached telecopy dated September 26, 1990 from David A. McCreery to George Hornig and telecopy dated September 25, 1990 from David A. McCreery to Lee Siegel.

3. Interoffice memorandum dated February 6, 1991 from Barry H. Gleen to Christopher Helm.

4. Telecopy dated February 22, 1991 from Barry Gleen to Karen Piaggione & Lee Siegel enclosing memorandum from Barry Gleen to Christopher Helm.

5. Telecopy dated February 25, 1991 from Chris Helm to Lee Siegel enclosing memorandum from Barry Gleen to Christopher Helm and telecopy dated February 25, 1991 from Chris Helm to Karen Piaggione and supporting documents for application. (The handwritten notes were made by Ms. Piaggione.)

6. Telecopy dated March 8, 1991 from Karen Piaggione to Barry Gleen.

7. Telecopy dated March 13, 1991 from Barry Gleen to Karen Piaggione enclosing telecopy from Barry Gleen to Christopher Helm.

8. By hand letter dated March 26, 1991 from Barry H. Gleen to Lee Siegel with enclosures.

9. Telecopy dated March 27, 1991 from Takashi Sakuragi of Tsuchiya Sakuragi & Sogi.

10. KDW Bills and covering letters to W & P Co.

11. Telecopy dated March 27, 1991 from Lee Siegel to Barry Gleen.

12. By hand letter from Barry Gleen to Lee Siegel dated March 28, 1991.

13. Telecopy dated March 29, 1991 from Susumu Niibori to Takashi Sakuragi.

21. The Court also finds the following facts based on the record of these proceed-

ings, the submissions of the parties and statements made at oral argument:

22. The U.S. Trustee has stated that prior to the appointment of the Examiner, he had interviewed numerous candidates and carefully reviewed each candidate's potential conflicts of interest. He did not represent that he had been informed of the relationship between WP & Co. and KDW at the time of his review.

23. On February 28, 1991, an order was entered by this Court approving the appointment by the U.S. Trustee of Sandra E. Mayerson as Examiner in this case.

24. On March 18, 1991, an order approving the appointment of Sandra E. Mayerson as Examiner in these proceedings and defining the scope of her responsibilities was signed by the Court and filed with the Clerk. The Order was entered as of February 28, 1991.

25. On March 13, 1991, the Examiner applied for authorization to retain KDW as counsel.

26. On March 14, 1991, this court entered its Order Authorizing Employment of Counsel as of March 13, 1991.

27. In support of the Examiner's application, Merrill B. Stone, Esq., a KDW partner, submitted an affidavit, sworn to on March 13, 1991, which disclosed certain information concerning possible conflicts of interest, including the fact that KDW had performed immigration services for certain creditors of Interco unrelated to the Interco cases. The affidavit did not disclose that KDW had also performed similar services for WP & Co.

28. WP & Co. does not claim that KDW's failure to disclose its immigration services for WP & Co. was willful or intended to mislead the Court.

29. In a supplemental affidavit, dated March 29, 1991, Mr. Stone voluntarily informed the Court that after filing his original affidavit it was brought to his attention that KDW had performed the above-described services for WP & Co.

30. KDW has taken reasonable steps to ensure that all matters which could potentially relate to its disinterestedness are brought to the attention of this court.

31. Although KDW and TSS performed services for WP & Co. subsequent to the appointment of the Examiner, KDW is not presently performing any services for WP & Co. and represents that it will not accept any employment by WP & Co. during the pendency of these proceedings.

32. The U.S. Trustee carefully considered possible conflicts of interest when the Examiner was chosen. The U.S. Trustee does not view the alleged conflict as material or disqualifying under the Bankruptcy Code or the rules of professional conduct.

33. The Examiner has begun her services and has been responsible for a considerable amount of activity in these proceedings.

34. The debtors' estates have made an investment of both time and resources in the Examiner's and KDW's performance of their duties since their appointment. Valuable time would be lost and money wasted if they were to be replaced at this time.

35. Of 66,000 creditors, only WP & Co. seeks to disqualify the Examiner and KDW; all other parties appearing on this motion have actively opposed their disqualification.

36. No other question has been presented with respect to the ability of the Examiner or KDW to ably perform the services for which they were appointed.

37. Any factual statements contained in the following Conclusions of Law shall be deemed to be additional Findings of Fact.

## CONCLUSIONS OF LAW

The Court has considered all the relevant factors as stated in the cases cited by the parties and weighed them in light of the facts and circumstances presented and reaches the following conclusions:

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. sections 1334 and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri.

2. This is a core proceeding pursuant to 28 U.S.C. section 157(b)(2)(A) which the Court may hear and determine.

3. Section 1104(c) of the Bankruptcy Code, 11 U.S.C. § 1104(c), provides that the Examiner must be a "disinterested person" as defined under 11 U.S.C. § 101(14).

4. Section 101(14)(E) requires that a disinterested person not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or an interest in, the debtor or any investment banker specified in Section 101(14) or, for any other reason.

5. Under the Bankruptcy Code and Rules, professional persons retained by the estate also must be disinterested. A professional person must, therefore, closely review his business connections and disclose any and every association which may bear upon a determination of disinterestedness.

6. If disclosure is not made before order of appointment, the court must weigh the facts and circumstances incident to the omission. The Court has reviewed the authorities cited by the parties in their submissions concerning the factors to be considered in such circumstances.

7. Upon reviewing all of the facts presented and the applicable legal standards, the Court finds that there is no conflict of interest presented here and that both the Examiner and KDW are disinterested persons under the Bankruptcy Code.

8. KDW's services for WP & Co. concerned only minor immigration matters completely unrelated to the debtors or WP & Co.'s business dealings with the debtors, and there can be no question of a material adverse interest.

9. In light of the minor nature of the services performed by KDW for WP & Co., considerations of practicality weigh heavily against disqualification. The Examiner and KDW have already begun their services and undertaken considerable efforts, and the debtors' estates would be material-ly harmed if the Examiner or her counsel were disqualified at this time.

10. The relationship between WP & Co. and KDW is not materially adverse to the estate, the creditors of the estate or the equity securityholders. KDW's past performance of visa application services for WP & Co. will not in any manner impair KDW's or the Examiner's ability to carry out their duties in this proceeding since those services were completely unrelated to the matters at issue here and did not involve access to any confidential information. Those services do not give rise to an actual conflict of interest or to a materially adverse interest that would require disqualification of the Examiner or KDW.

11. Furthermore, WP & Co. has failed to demonstrate any injury to it or the estate which has occurred or will occur as a result of the Examiner's or KDW's appointment and fulfillment of their duties.

12. The Missouri Supreme Court has adopted a modified version of the ABA Rules of Professional Conduct to govern the conduct of the bar in this state. The United States District Court for the Eastern District of Missouri also follows the rules of professional conduct as adopted by the Missouri Supreme Court. This Court is guided by the ethical canons in the Missouri rules as they relate to disqualification of counsel.

13. The Examiner and KDW are not adversaries of WP & Co. or advocates against WP & Co. in this proceeding because, *inter alia*, the Examiner's role is by its nature disinterested and non-adversarial. There is no doubt that the Examiner is a neutral party in a bankruptcy case.

14. KDW's services for WP & Co. were minor and ministerial in nature. KDW has never represented WP & Co. in litigation as an advocate.

15. No conflict of interest exists because KDW's services for WP & Co. have ended, and those services are conceded to have no bearing on the matters at issue in this proceeding.

16. Even if it is assumed, as WP & Co. alleges, that KDW's employment by WP &

Co. was, for a few days, concurrent with its representation here, KDW's ethical responsibilities to WP & Co. were not compromised because KDW finished providing services without ever having acted as an advocate against WP & Co. or otherwise acting adversely to it. KDW as counsel to the Examiner is not empowered to file suit or otherwise act as an advocate against WP & Co. KDW's ability to represent each client vigorously was, thus, unimpaired, no confidences were jeopardized and the matters were completely unrelated.

17. By any standard of materiality, the services performed by KDW for WP & Co. were extraordinarily minor and do not rise to the level of a material adverse interest. No facts have been presented which would indicate that the Examiner is incapable of discharging her responsibilities in the neutral manner required by law.

18. Disqualification is also not appropriate in this case because WP & Co. will not be prejudiced by the Examiner's or KDW's continued services. Moreover, WP & Co. has not made any showing that these proceedings will be tainted in the slightest degree by the continued employment of the Examiner or KDW.

19. Accordingly, the Court finds and concludes that neither the Examiner nor KDW is disqualified to act in these proceedings based upon the applicable provisions of the Bankruptcy Code, the Missouri Supreme Court Rules, the Eastern District of Missouri Court Rules, the rules of professional conduct accepted by the Missouri Bar Association or any other ethical considerations.

ORDER

Upon consideration of the record as a whole and based on the foregoing findings and conclusions, it is hereby ORDERED that WP & Co.'s motion to disqualify the Examiner and Counsel to the Examiner is DENIED in all respects.